UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

REIDY CONTRACTING GROUP, LLC )
and MERCHANTS MUTUAL )
INSURANCE COMPANY, )
)
    Plaintiffs, )
)
    v. )        Case No. 1:20-cv-391
)
MT. HAWLEY INSURANCE COMPANY, )
)
    Defendant. )

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**
**(Docs. 19, 20)**

The parties in this insurance coverage case disagree over the application of the "Employers Liability Exclusion" in a commercial excess liability policy. The facts relevant to the coverage issues are undisputed (with the possible exception of the issue addressed below in footnote 1).

**Facts**

**I.     The Accident**

On January 8, 2013, David Zhigue, Manuel Japa, and Segundo Japa were injured in the course of their employment by Vanquish Contracting Corporation ("Vanquish") on a construction site in New York City. Vanquish was a sub-contractor hired by the general contractor managing the project (Reidy Contracting Group, Inc. "Reidy") to carry out demolition work. While the three workers were engaged in demolishing an internal wall, a portion of an ornamental plaster ceiling fell onto a scaffold. Manuel Japa and Segundo Japa fell to the ground. The scaffold fell on David Zighue. All three men suffered injuries. (Pls.' SUMF ¶¶ 4–6, Doc. 19-1.)

## II.      State court litigation

In 2013, the injured workers brought suit in New York Supreme Court against the building's owner (Lexington Landmark Properties, LLC), the building's lessee (Dover Street Market New York, LLC), and Reidy as the general contractor.  See *Zhigue v. Lexington Landmark Props., LLC*, 183 A.D. 3d 854, 855, 124 N.Y.S. 3d 391 (N.Y.App.Div. 2020).  Reidy brought a third-party action against Vanquish and Vanquish's primary CGL insurer Endurance American Specialty Ins. Co. (Endurance) seeking indemnification.  (See Doc. 19-9).  That litigation is ongoing.

## III.      Contractual Obligation of Vanquish to Name Reidy as an Additional
        Insured

The subcontract between Reidy and Vanquish required Vanquish to obtain commercial general liability ("CGL") insurance that protected Reidy "as additional insureds for operations performed hereunder." (Doc. 19-16 at 4.)  In addition to its primary CGL policy placed with Endurance, Vanquish held an excess-liability policy from Mt. Hawley Insurance Co. ("Mt. Hawley" at the time of the January 8, 2013 scaffold collapse.  This coverage dispute concerns the availability of Mt. Hawley's excess coverage to respond to the bodily injury claims against Reidy.

## IV.      The Endurance CGL Policy

The Endurance CGL policy lists Vanquish as the named insured.  (Doc. 19-21 at 4.) It includes an "Additional Insured – Blanket (Contractors)" endorsement.  That endorsement states, in pertinent part:

> The following are included as additional insureds:
>
> Any entity required by written contract or as required in writing from a municipality as a condition of issuing a permit (hereinafter for purposes of this endorsement called "additional insured") to be named as an insured is an insured but only with

2

respect to liability arising out of your premises, "your work" for the additional insured, or acts or omissions of the additional insured, in connection with their general supervision of "your work" to the extent set forth below:

1) The limits of insurance provided on behalf of the additional insured(s) will not be greater than the limits of insurance provided in this policy.

2) Except as provided herein all insuring agreements, exclusions and conditions of this policy apply to such additional insured(s).

3) The insurance provided by us to the additional insured will not be greater than that required by contract and to the extent that such insurance is more restrictive the terms of the insuring agreements, exclusions and conditions of this policy shall be deemed to be amended accordingly.

4) In no event shall coverages or limits of Insurance in this policy be increased by such contract.

This insurance does not apply to: . . .

b) "Bodily injury" or "property damage" arising out of any act, omission or negligence of the additional insured(s) or any of their "employees" or "temporary workers", other than the general supervision of work performed for the additional insured(s) by you.

(*Id.* at 155–56.) The policy also contains multiple exclusions, one of which is entitled

"Employer's Liability" and states that the Endurance policy does not apply to "bodily injury" to:

"(1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the

insured . . . ." (*Id.* at 12.)

### V.    Mt. Hawley Excess-Liability Policy

The Mt. Hawley excess-liability policy lists Vanquish as the named insured and identifies

the Endurance CGL policy as the "underlying insurance." (Doc. 19-23 at 3.) The Mt. Hawley

policy defines "insured" to mean "any person or organization qualifying as an insured person

under the terms of the **underlying insurance**." (*Id.* at 5.) The Mt. Hawley policy further states:

"This policy, except where provisions to the contrary appear herein, is subject to all of the

conditions, agreements, exclusions, and limitations of and shall follow the **underlying insurance** in all respects. This includes changes by endorsement." (*Id.*)

The policy also includes the following provision regarding "Separation of Insureds": "Except with respect to the limits of liability this insurance applies as if each Named Insured were the only Named Insured and separately to each insured against whom claim is made or suit is brought." (*Id.* at 11.)

Last, the Mt. Hawley excess-liability policy contains the following "Employers Liability Exclusion":

> This policy does not apply to "bodily injury" to:
> 1. An "employee" of any insured arising out of and in the course of:
>    a. Employment by the insured; or
>    b. Performing duties related to the conducted of the insured's business; or
> 2. The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph 1. above.
> This exclusion applies:
> 1. Whether the insured may be liable as an employer or in any other capacity; and
> 2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.
> This exclusion shall also apply to liability assumed by the insured under an "insured contract."

(Doc. 19-23 at 22.)

## VI.   Procedural History in this court

In 2013, Mt. Hawley disclaimed coverage to Vanquish and to Reidy based on the Employer's Liability Exclusion that appears in its excess policy. (Docs. 19-25, 19-26.) In March 2020, Merchants and Reidy demanded that Mt. Hawley withdraw the disclaimer. (Docs. 19-27, 19-28.) Reidy and its excess liability insurer Merchants Mutual Insurance Company filed this declaratory judgment action in April 2020. (Doc. 1.) Plaintiffs seek a judgment declaring that Mt. Hawley is required to provide Reidy with coverage under the terms of the Mt. Hawley excess policy. The parties filed cross motions for summary judgment in

November 2022.  (Docs. 19, 20.)  The court heard argument on the cross-motions on April 20,

2023 and took the matter under advisement at that time.

## Legal Standards

"The summary judgment standards are well established." *Lewis v. Siwicki*, 944 F.3d 427,

431 (2d Cir. 2019).  Summary judgment may be granted only "if the movant shows that there is

no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).  When reviewing a motion for summary judgment, a court must

"construe the record evidence in the light most favorable to the non-moving party and draw all

reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021).

Where, as here, the court is faced with cross-motions for summary judgment, the court is mindful

that such motions "are no more than a claim by each side that it alone is entitled to summary

judgment." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 103 (2d Cir. 2010)

(quoting *N.Y. State Ass'n of Realtors, Inc. v. Shaffer*, 27 F.3d 834, 838 (2d Cir. 1994)).  The

court "evaluate[s] each party's motion on its own merits, taking care in each instance to draw all

reasonable inferences against the party whose motion is under consideration." *Jingrong v.

Chinese Anti-Cult World All., Inc.*, 16 F.4th 47, 56 (2d Cir. 2021) (quoting *Byrne v. Rutledge*,

623 F.3d 46, 53 (2d Cir. 2010)).

The parties agree that the applicable substantive law in this case is New York law.  To

resolve a dispute over insurance coverage, New York courts look first "to the language of the

policy." *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 681,

49 N.Y.S.3d 65, 71 N.E.3d 556 (2017) (quoting *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*,

98 N.Y.2d 208, 221, 746 N.Y.S.2d 622, 774 N.E.2d 687 (2002)).  "As with the construction of

contracts generally, unambiguous provisions of an insurance contract must be given their plain

and ordinary meaning, and the interpretation of such provisions is a question of law for the

court." *Id.* at 681–82 (quoting *Vigilant Ins. Co. v. Bear Stearns Cos.*, 10 N.Y.3d 170, 177,

855 N.Y.S.2d 45, 884 N.E.2d 1044 (2008)).  "Of course, where the policy may be reasonably

interpreted in two conflicting manners, its terms are ambiguous . . . and any ambiguity must be

construed in favor of the insured and against the insurer." *Id.* at 682 (citations and internal

quotation marks omitted); *see also Hastings Dev., LLC v. Evanston Ins. Co.*, 701 F. App'x 40, 42

(2d Cir. 2017) (summary order) (articulating standards for determining whether language in a

contract is ambiguous).  But ambiguity does not exist "simply because the parties urge different

interpretations." *Hastings*, 701 F. App'x at 42 (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins.

Co.*, 252 F.3d 608, 616 (2d Cir. 2001)).

 To negate coverage under an exclusion, "an insurer must establish that the exclusion is

stated in clear and unmistakable language, is subject to no other reasonable interpretation, and

applies in the particular case." *Incorporated Village of Cedarhurst v. Hanover Ins. Co.*,

89 N.Y.2d 293, 298, 653 N.Y.S.2d 68, 675 N.E.2d 822 (1996) (quoting *Continental Cas. Co. v.

Rapid-American Corp.*, 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993)).

"Policy exclusions 'are not to be extended by interpretation or implication, but are to be accorded

a strict and narrow construction.'" *Id.* (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d

304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984)).

### Analysis

 The dispute in this case results from the extension of coverage to both the "named

insured"—Vanquish—and "additional insureds" such as Reidy.  The court determines the scope

of the coverage afforded to Reidy by answering two questions.  The first is whether Reidy is

included as an "additional insured" in the Mt. Hawley policy.  The second is whether Reidy is excluded from coverage under the Employer Liability Exclusion.

## I.      Who is an Additional Insured?

Because the Mt. Hawley policy provides excess coverage, it incorporates the definition of "insured" provided in the primary policy issued by Endurance American Specialty Insurance Co.

The Endurance policy extends coverage to additional parties through the following endorsement:

It is hereby agreed that:

The following are included as additional insureds:

Any entity required by written contract . . . (hereinafter for purposes of this endorsement called "additional insured") to be named as an insured is an insured but only with respect to liability arising out of your premises, "your work" for the additional insured, or acts or omissions of the additional insured, in connection with their general supervision of "your work" to the extent set forth below . . .

(Doc. 19-22.)  There is no dispute that Reidy is an "entity required by written contract . . . to be named as an insured" or that the scaffold accident falls within the scope of work covered by the Endurance and Mt. Hawley policies.  The Vanquish sub-contract for demolition work required it to obtain coverage for Reidy.  (Doc. 20-3 at 2.)  The accident occurred on the job site referenced in the subcontract.  Endurance has paid out the limit of the primary coverage.  Why, one might wonder, is there any dispute?  The answer lies in the language used by Mt. Hawley in the so-called "Employers Liability Exclusion," also known as the "Cross Liability" and the "Action Over Exclusion."[1]

---

[1] Mt. Hawley argues in the alternative that a declaration that its policy provides coverage would be premature because the Endurance policy excludes coverage for claims not related to Reidy's responsibility for general supervision.   The Endurance policy contains the following limitation for coverage for additional insureds such as Reidy:

**II.      Effect of the "Employers Liability Exclusion"**

Before turning to the policy language, the court considers the purpose of the exclusion.

Employers liability exclusions commonly appear in commercial general liability policies in order

to prevent duplication of coverage for on-the-job injuries to employees covered by mandatory

workers compensation laws.  "[The exclusion] exempts coverage for bodily injury to an

employee arising out of and in the course of employment by the insured or during the

---

This insurance does not apply to: . . . 'Bodily injury' or 'property damage' arising out of
any act, omission or negligence of the additional insured(s) or any of their 'employees' or
'temporary workers', other than the general supervision of work performed for the
additional insured(s) by you."  (Doc. 19-21 at 155–156.)

In Mt. Hawley's view, its coverage is not triggered until the underlying lawsuit resolves
the question of whether Reidy may be found negligent in "the general supervision of work" or
for some other reason.   Reidy responds that its only role in the demolition work was one of
"general supervision" and that a denial of coverage on this basis, 10 years after the accident,
comes far too late and violates N.Y. Ins. Law § 3420(d).

The difficulty with Mr. Hawley's argument in favor of delaying a decision is that the
underlying lawsuit may never provide a clear answer to the specific basis for Reidy's liability.  If
the parties settle, their agreement is unlikely to answer the question.  Similarly, there is little
assurance that a jury verdict will be crafted to answer the question of whether Reidy was found
to be at fault due to a failure of "general supervision of work" or on some other basis.   The
evidence supplied by Reidy is that the three injured workers were supervised by a foreman
working for Vanquish.  (Doc. 21 at 15–16.)  This factual issue is not fully developed.

The court will resolve this aspect of the dispute by allowing Mt. Hawley 30 days to
supplement the record with any evidence supporting a claim that Reidy may be found liable to
the three injured workers on some basis other than its "general supervision of work."  Plaintiffs
will have 30 days to respond.

If there is no evidence of a basis for holding Reidy liable beyond its obligation to provide
general supervision of work, the exclusion does not apply.  If there is a factual dispute about the
legal basis on which Reidy may be found liable to the three workers in the state court litigation,
the federal court will have to consider waiting for a resolution of the underlying litigation or
making its own factual determination after a hearing.  After hearing from the parties, the court
will also resolve the question of whether N.Y. Ins. Law § 3420(d) bars the late assertion of the
denial of coverage when the parties seeking coverage include both a potential insured and its
excess insurer.

performance of duties relating to the conduct of the insured's business."   9A Couch on

Insurance § 129.12 (3d ed.).   Such claims are insured through a Workers' Compensation and

Employers Liability Policy and not through a CGL policy of the type at issue here.   3 Jeffrey E.

Thomas, New Appleman on Insurance Law Library Edition § 18.03[5] (LexisNexis).

      The employer's liability exclusion commonly bars coverage for claims by employees

against their own employer.   The exclusive remedy provision of state workers compensation law

provides the employee's remedy for on-the-job injury.   N.Y. Workers' Comp. Law § 11.   The

area of dispute in this case as in many others concerns the application of the exclusion when an

employee of the sub-contractor files suit against a third-party such as the general contractor or

the owner of a building site.   As a result of indemnity provisions frequently placed in sub-

contracts, the general contractor is frequently named as an additional insured in the sub-

contractor's CGL policy.   The exclusion of coverage for lawsuits by the sub-contractor's

employee is at odds with the requirement that the sub-contractor supply insurance coverage for

just such claims.

      The historical development of New York construction law raises the stakes for

enforcement of the employers liability exclusion.   New York Labor Law §§ 200, 240(1) and

246(6) have long imposed a nondelegable duty on general contractors and property owners to

maintain safe conditions on a construction worksite.   The duty extends to the employees of sub-

contractors such as Vanquish.   New York law permits these employees to sue "upstream" actors

for personal injury caused by unsafe conditions.   That is what has happened here—the injured

employees brought lawsuits against the general contractor, alleging violation of the "scaffold

law," N.Y. Lab. Law § 240(1).

As noted above, the employers liability exclusion in the Mt. Hawley excess policy provides:

> This policy does not apply to "bodily injury" to:
> 1. An "employee" of any insured arising out of and in the course of:
>    a. Employment by the insured; or
>    b. Performing duties related to the conduct of the insured's business.
> 2. The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph 1. above.
>    This exclusion applies:
> 1. Whether the insured may be liable as an employer or in any other capacity; and
> 2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.
> This exclusion shall also apply to liability assumed by the insured under an "insured contract."

(Doc. 20-21 at 21.)   As we will see, the exclusion contains a variation from similar language in the primary Endurance policy.  In place of the reference in subparagraph 1 to an employee of **the** insured arising out and in the course of employment by **the** insured, the exclusion mixes it up -- referring to an employee of **any** insured arising out of and in the course of employment by **the** insured.   The choice of the definite article "the" supplies the origin of the parties' dispute.

The Mt. Hawley policy also contains a Separation of Insureds provision recited above: "Except with respect to the limits of liability this insurance applies as if each Named Insured were the only Named Insured and separately to each insured against whom claim is made or suit is brought."  (*Id.* at 10.)

The parties disagree about whether the phrase "an employee of any insured arising out and in the course of employment by the insured" includes the three injured workers.  The workers are certainly "employees of any insured" because they were employed by the named insured Vanquish at the time of the accident.  The parties disagree about what is meant by "employment by the insured."  If "the insured" means Reidy—as Plaintiffs contend—the exclusion will not apply because the three workers were not Reidy employees.  If "the insured"

means any party covered by the policy—as Defendant argues—then the exclusion applies.  At its

heart, the case concerns the narrowing effect of the use of the definite article and the contrasting

use in other cases of phrases such as "employment by an insured" or "employment by any

insured."

The court seeks to review the leading cases according to variations in the way that these

exclusions are phrased.

### A.      Cases in which the exclusion covers claims of injury to an employee of the named insured arising out of employment by the named insured

These are the easiest cases.  "Named insured" is a defined term in most policies.  It

means the party that obtained the coverage.  The scope of activity covered by the exclusion is

"employment by the named insured."  The phrase "employee of the named insured" is consistent

with the phrase "employment by the named insured" and therefore unambiguous in its meaning.

*Endurance American Specialty Insurance Co. v. Century Surety Co.*, 630 F. App'x 6

(2d Cir. 2015) (summary order) [hereinafter *Endurance v. Century*], supplies an example.  In that

case, the general contractor and its insurer sought coverage for the cost of defending a lawsuit

brought by the injured employee of a subcontractor.  The exclusion applied to "[a]n 'employee'

of the named insured arising out of and in the course of (a) Employment by the named insured;

or (b) Performing duties related to the conduct of the named insured's business . . . ."  *Id.* at 7.

The phrase "named insured" was defined in the policy as the subcontractor only.  It was

undisputed that the injured plaintiff was employed by the subcontractor.  The court held that,

"[a]ccordingly, the text unambiguously excludes insurance coverage for injuries to [the

worker]."  *Id.* at 8.  The court rejected the argument that the Separation of Insureds provision

required the trial court to interpret the exclusion as if it named the general contractor as another

named insured.[2]  *See id.* (separation-of-insureds provision did not apply because the exclusion referred to "the named insured" rather than to "the insured").

Other cases involving this formulation of the exclusion are in accord.  *See Old Republic Gen. Ins. Corp v. Century Surety Co.*, 778 F. App'x 57, 58 (2d Cir. 2019) (summary order) ("The Action Over exclusion unambiguously bars coverage for injuries suffered by the employee of the named insured sustained during his employment."); *M. Ali Constr., Inc. v. United Specialty Ins. Co.*, No. 19-CV-4514, 2020 WL 3316019, at *3 (E.D.N.Y. June 18, 2020) ("The scope of action over exclusion endorsements containing similar or identical language has been litigated multiple times in this circuit and, in every instance, the conclusion has been the same: the exclusion bars coverage for *any* claim made by an employee of the named insured for an injury sustained during the course of her employment.").

### B.   Cases in which the exclusion covers injury to an employee of any insured arising out of and in the course of employment by any insured

These cases introduce a variation on our theme.  In place of the "named insured," the policy may refer to employees of **any insured** and injuries arising out of employment by **any insured**.  Parties seeking to prevent enforcement of the exclusion argue that the phrase "employment by any insured" introduces ambiguity because it may refer to employees of the named insured or to the general contractor or property owner.  They contend that the "separation of insureds" provision limits the application of the employer liability exclusion to an additional insured's employees only, not the employees of the named insured.

--------------------------------

[2] The definition of who is the named insured for purposes of the employer liability exclusion is not always free of ambiguity.  *See Hastings Dev., LLC v. Evanston Ins.*, 701 F. App'x 40 (2d Cir. 2017) (summary order) (reference to an employee of the named insured creates ambiguity when the policy contains multiple named insureds).  This case does not present the same problem due to the use of the phrase "an employee of any insured."

Courts applying New York law have generally rejected this interpretation. *See Nautilus Ins. Co. v. Barfield Realty Corp.*, No. 11 Civ. 7425, 2012 WL 4889280, at *10 (S.D.N.Y. Oct. 16, 2012) ("[W]here, as here, the language of the [employers liability] exclusion refers to '*any* insured' it should be read to supersede the separation of insureds language in order both to effectuate its plain meaning, and to avoid rendering the clause a nullity."); *see also ROMCO Structural Sys. Corp. v. AXIS Ins. Co.*, 596 F. Supp. 3d 464 (E.D.N.Y. 2022) (exclusion of claims arising in the course of employment by "any insured" was unambiguous); *Am. Eur. Ins. Co. v. Tirado Iron Works & Fence, Inc.*, No. 19-CV-6851, 2021 WL 7830143 (E.D.N.Y. Oct. 20, 2021); *Buckingham Properties, LLC v. Atl. Cas. Ins. Co.*, No. 17-CV-6656, 2020 WL 95422 (W.D.N.Y. Jan. 8, 2020); *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392 (S.D.N.Y. 2015) (phrase "employment by any insured" excludes claim against other insureds without ambiguity); *385 Third Ave. Assocs., L.P. v. Metro. Metals Corp.*, 916 N.Y.S.2d 95 (App. Div., 1st Dep't 2011) ("[C]ross liability exclusion . . . unambiguously excludes from coverage . . . injury to . . . employee of any insured."); *DRK, LLC v. Burlington Ins. Co.*, 905 N.Y.S. 2d 58, 59 (App. Div., 1st Dep't 2010) ("Neither the general 'Separation of Insureds' provision contained in the policy, nor the separation of insureds doctrine . . . renders this exclusion ambiguous.").[3]

### C.    Cases in which the exclusion covers injury to an employee of the insured arising out of and in the course of employment by the insured

---

[3] An earlier line of cases held that the employer's liability exclusion did not apply to non-employers because they did not receive the protection of the exclusive remedy under workers compensation law. *See Shelby Realty LLC v. Nat'l Sur. Corp.*, No. 06 Civ. 3260, 2007 WL 1180651 (S.D.N.Y. Apr. 11, 2007); *Ostrowski v. Am. Safety Indem. Co.*, No. 07-CV-3977, 2010 WL 3924679 (E.D.N.Y. Sept. 30, 2010). These cases were not followed in the more recent decisions cited above and do not reflect the current direction of case law in this area.

There is a third variation.  In some policies, the exclusion refers to employees of **the** insured arising out of employment by **the** insured.

In *Employers Insurance Co. of Wausau v. Harleysville Preferred Insurance Co.*, 726 F. App'x 56 (2d Cir. 2018) (summary order), an employee of an electrical sub-contractor died in a workplace accident on the Throgs Neck Bridge in New York City.  The estate sued multiple parties, including the Metropolitan Transit Authority and Triborough Bridge and Tunnel Authority as owners of the premises.  The MTA and the TBTA sought coverage under a commercial auto policy issued to the deceased's employer.  That policy contained an employer's liability exclusion precluding coverage, in pertinent part, for injury to "[a]n 'employee' of the 'insured' arising out of and in the course of: (1) Employment by the insured." *Id.* at 62.  In a summary order, the Second Circuit concluded that the phrase "employment by the insured" should be interpreted to refer to the MTA and the TBTA since they were the parties seeking coverage.

> It is significant that the exclusion refers to "*the* insured," rather than "an insured" or "the named insured."  For the latter two wordings, the reference would always include [the deceased's employer], who is the named insured and, of course, *an* insured.  The phrase "the insured," however, is not conducive to the same reading, because it refers to a specific insured while not necessarily referring to the named insured.  It is reasonable to read "the insured" to refer solely to whichever insured is seeking coverage: in this instance, the MTA and the TBTA.  This reading is supported further by the [subject] policy's general provision that "the coverage afforded applies separately to each [individual] insured who is seeking coverage or against whom a claim or 'suit' is brought.

*Id.* at 62–63 (citations omitted).  Because the deceased employee was not an employee of the MTA or the TBTA, the employer's liability exclusion did not apply to claims against these agencies.

The court previously discussed *Endurance American Specialty Ins. Co. v. Century Sur. Co.*, 630 Fed. Appx. 6 (2d Cir. 2015) as an example of the consequences of using the phrase "the

named insured" to define the scope of the exclusion. The *Endurance* decision also considered the consequences—a counter-factual—if the exclusion had referred to "the insured." "This logic [declining to enforce the exclusion] would apply if the Action Over Exclusion clause used the language 'the insured' rather than 'the named insured.' In that scenario, the provision would be read to replace 'the insured' with [the general contractor] because the [general contractor] is seeking coverage." *Id.* at 8. The court's resolution of this hypothetical dispute is consistent with its decision in *Harleysville.*

This case falls into the third category. The employer's liability exclusion refers to an employee of any insured arising out of employment by the insured. The first phrase "an employee of any insured" causes no difficulty. The three workers were employees of Vanquish which is clearly an insured since it obtained the policy and is the named insured. It is the second phrase "employment by the insured" that creates the fatal uncertainty. "The insured" could refer to several parties, including Reidy. Since the three workers were not employed by Reidy, their claims could not arise from their employment by Reidy and the exclusion would not apply.

Reidy's position is strengthened because courts consistently apply the Separation of Insureds provision to mean that the phrase "the insured" refers to the party seeking coverage. *See Employers Insurance Co. of Wausau v. Harleysville Preferred Insurance Co.*, 726 F. App'x 56, discussed above. In other words, "employment by the insured" could refer to employment by Vanquish or Reidy and because Reidy is the party seeking coverage, it most likely refers to Reidy. *See Nautilus Ins. Co. v. Barfield Realty Corp.*, No. 11 Civ. 7425, 2012 WL 4889280, at *10 (S.D.N.Y. Oct. 16, 2012) ("[W]here exclusionary endorsements refer to '*the* insured,' . . . the separation of insureds language does indeed control, as the clauses may be read together in harmony."); *see also Johnson v. Atl. Cas. Ins. Co.*, No. 13-CV-1002S, 2015 WL 5021953, at *4

(W.D.N.Y. Aug. 24, 2015) (exclusion referring to "the insured" unambiguously applied to preclude coverage for injuries to subcontractors' employees); *Arcelormittal Plate, LLC v. Joulé Tech. Servs., Inc.*, 558 F. App'x 205, 210 (3d Cir. 2014) (same result under New Jersey law); *Emps.' Liab. Assurance Corp. v. Travelers Ins. Co.*, 411 F.2d 862, 866 (2d Cir. 1969) (Friendly, J.) (predicting same result under Connecticut law).

In this case, the court will follow the lead of *Endurance v. Century* in recognizing that the use of the phrase "the insured" instead of "the named insured" or "any insured" prevents the application of the exclusion to claims against the upstream insureds.[4]  In *Endurance*, the court interpreted "the insured" to mean the entity seeking coverage.  Because the upstream defendant sought coverage, it was "the insured."  The injured worker—no employee of the general contractor—was therefore not performing work arising out and in the course of his employment by "the insured."  This analysis is further supported by the "separation of insureds" clause in the body of the policy, requiring each named insured's claim for coverage to be considered in a manner separate from that of other potential insureds.

The analysis in *Endurance v. Century* is not without its faults.  The conclusion that the meaning of the phrase "employment by the insured" depends upon who is asking is contrary to the "plain meaning" principle generally applied in the interpretation of policy terms. Restatement of the Law of Liability Ins. § 3 (2019).  It is more conventional to seek a single objective meaning—or to conclude that the phrase is ambiguous.  It also seems unlikely that a

---

[4] The fit between *Endurance* and this case is not perfect because Mt. Hawley elected to use the phrases "any insured" and "employees of the insured" in the same exclusion.  The choice of different words—"any" and "the"—permits Mt. Hawley to argue that construing the exclusion to apply only to employees of the insured seeking coverage (Reidy) leaves the preceding phrase "any insured" meaningless.  The use of "any" and "the" to refer to the same insureds is infelicitous.  But it does not lead to an unequivocal statement that favors Mt. Hawley's position. At most it opens the door to a finding of ambiguity which the court discusses below.

policy issued to a subcontractor would contain an exclusion preventing employees of the general contractor from filing suit against their employer. Such claims are already barred by the exclusive remedy provision and would not seem to need special treatment through a policy exclusion. But these critiques do not persuade the court to depart from the rule expressed in *Endurance v. Century.*

The alternative analysis is to determine that the phrase "employment by the insured" is ambiguous. Given the proximity of that phrase in subparagraph 1(a) to the phrase "any insured" in paragraph 1, one might argue that subparagraph 1(a) is subordinate to paragraph 1, and thus the phrase "the insured" in subparagraph 1(a) is the same insured referenced in paragraph 1 by the phrase "any insured." But Mt. Hawley cannot meet its burden to show that this is the only reasonable interpretation. As discussed above, the phrase "the insured" has been held to refer to a *particular* insured. As we have seen, New York courts have consistently construed the phrase to refer to the upstream defendant. At most, "employment by the insured" is reasonably susceptible of two meanings: employment by Vanquish or Reidy.

Under the interpretive principle of *contra proferentem*, any ambiguity is construed against the drafter—almost invariably the insurer which has issued the policy. Restatement of the Law of Liability Insurance § 4 (2019). If "the insured" can refer to either Vanquish or to Reidy, the principle requires the court to choose Reidy. This principle forms part of a broader interpretive bias in favor of resolving uncertainty and ambiguity in policy language against the insurer. *Incorporated Village of Cedarhurst v. Hanover Ins. Co.*, 89 N.Y.2d 293, 298, 653 N.Y.S.2d 68, 675 N.E.2d 822 (1996) Applying the *contra proferentem* principle, the phrase "employment by the insured" refers to Reidy because this is the interpretation less favorable to the insurer. Since Reidy did not employ the three injured workers, the employer's liability

exclusion does not apply. The court does not select a single meaning for the phrase "employment by the insured." Instead, the court concludes only that the phrase has two possible meanings, and the *contra proferentem* principle supplies a predictable outcome favoring Reidy as the non-drafting party.

The court is mindful that, "[i]n the context of an action predicated on a contract dispute, summary judgment is generally inappropriate where the contested contractual language is ambiguous." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). However, summary judgment may be appropriate in such cases "where the extrinsic evidence illuminating the parties' intended meaning of the contract is so one-sided that no reasonable person could decide to the contrary" or "where there is no extrinsic evidence that would support a resolution of [the] ambiguities in favor of the nonmoving party's case." *Id.* (alteration in original; internal quotation marks omitted). The court concludes that the latter exception applies here. No extrinsic evidence supports Defendants' interpretation.

This conclusion also protects Reidy's reasonable expectation of coverage. As one treatise explains, "general contractors and owners expect to receive coverage from their contractors' and subcontractors' CGL policies in addition to their own CGL policies when faced with bodily injury claims by the downstream employees." Scott C. Turner, *Insurance Coverage of Construction Disputes* § 13:8 (2d ed.). Construing an employers' liability exclusion to eliminate coverage "contradicts the intent and expectations of the parties." *Id.*

## Conclusion

The court concludes that as a matter of law, the employer's liability exclusion does not bar Reidy's claim for coverage. The court grants partial summary judgment to plaintiffs on this issue.

The court allows defendant Mt. Hawley Insurance Co. 30 days to supplement the record with any evidence in support of its separate argument that it does not provide coverage because the policy only responds to claims concerning the "general supervision of work" and the claims in this case exceed that limitation.  Plaintiffs have 30 days to respond.

Dated this 20 day of July, 2023.

Geoffrey W. Crawford, Judge
United States District Court