UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| REIDY CONTRACTING GROUP, LLC and MERCHANTS MUTUAL INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>MT. HAWLEY INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:20-cv-391 |

**SECOND SUPPLEMENTAL ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT
(Docs. 19, 20)**

In its July 2023 Order, the court concluded that the Employer's Liability Exclusion in defendant Mt. Hawley Insurance Company's excess-liability policy does not bar plaintiff Reidy Contracting Group, LLC's claim for coverage, and granted partial summary judgment to Plaintiffs on that issue. (Doc. 31 at 18.) At the same time, the court recognized Mt. Hawley's alternative argument based on a different provision (the "Endurance Limitation")[1] arising from an "Additional Insured" endorsement to the primary policy issued by Endurance American Specialty Insurance Co. and incorporated into the Mt. Hawley policy:

> This insurance does not apply to: . . . "Bodily injury" or "property damage" arising out of any act, omission or negligence of the additional insured(s) or any of their "employees" or "temporary workers", other than the general supervision of work performed for the additional insured(s) by you.

---

[1] The court previously referred to the provision as an "exclusion." (Doc. 31 at 7 n.1; Doc. 35 at 1.) As discussed below, Mt. Hawley asserts that the provision contains "exclusionary language" but that is not an "exclusion" to which New York Insurance Law § 3420(d) applies. (*See* Doc. 36 at 4.) The court did not intend to prejudge any issue by describing the language as an "exclusion" and refers to it here simply as a "limitation."

(Doc. 19-21 at 155–156; Doc. 20-22 at 52–53; *see also* Doc. 31 at 7 n.1.) The court granted Mt. Hawley an opportunity to supplement the record with evidence supporting its argument that this limitation applies and that the "general supervision" exception does not apply. (*See* Doc. 31 at 19.)

Mt. Hawley filed a memorandum and exhibits on August 18, 2023, arguing that Reidy was "actively negligent in connection with the underlying ceiling collapse" and that Reidy's liability "would not have arisen out of its general supervision of the work by named insured Vanquish Contracting Corp." (Doc. 32 at 1.) According to Mt. Hawley, "[a]ll or substantially all of the negligence that could be allocated to a contractor in connection with the accident arises from acts and omissions that predated Vanquish's work on the site, *i.e.*, the decision to permit the ceiling at issue to stay in place, accompanied by the decision to not alter the plans or supplement site safety in response." (*Id.* at 1–2.)

Plaintiffs filed a memorandum and exhibits in response, arguing:

(1) Mt. Hawley failed to timely disclaim based on the Endurance Limitation, and New York Insurance Law § 3420(d) applies;

(2) the Endurance Limitation is unavailable based on Mt. Hawley's own "ripeness" argument; and

(3) the factual record developed in the underlying litigation shows that the Endurance Limitation does not apply.

(*See* Doc. 33.) The court granted Mt. Hawley an opportunity to file a further supplemental brief on the timeliness issue. (Doc. 35.) Mt. Hawley filed its supplemental brief in December 2023. (Doc. 36.)

2

**Background**

The court presumes familiarity with the facts of this case as discussed in the July 2023 Order. (*See* Doc. 31.) After the court's July 2023 Order, the parties in the underlying state-court litigation filed a stipulation of discontinuance, reflecting that a settlement was reached in that case. *See* Stipulation of Discontinuance, *Zhigue v. Lexington Landmark Properties LLC*, No. 823/2013 (N.Y. Sup. Ct. Mar. 11, 2024), NYSCEF No. 278. Additional facts are set forth below as necessary.

**Analysis**

I. **Timeliness of Mt. Hawley's Disclaimer Based on the Endurance Limitation**

Plaintiffs argue that the first time Mt. Hawley ever asserted the Endurance Limitation as to Reidy was on November 11, 2022, when Mt. Hawley moved for summary judgment in this action. Plaintiffs maintain that Mt. Hawley's attempt to disclaim on that basis now—years after it first disclaimed coverage in February 2013—is unenforceable under New York Insurance Law § 3420(d)(2).[2] (Doc. 33 at 4.) Mt. Hawley maintains that Plaintiffs' arguments under § 3420(d)(2) are "invalid as a matter of law." (Doc. 36 at 2.)

Section 3420(d)(2) of New York's Insurance Law provides as follows:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

Mt. Hawley contends that § 3420(d)(2) is inapplicable for a variety of reasons. (*See* Doc. 36.) The court considers those arguments in turn.

---

[2] Plaintiffs also argue that, even if § 3420(d)(2) does not apply, Mt. Hawley's disclaimer "issued numerous years later is untimely as a matter of law." (Doc. 33 at 4.) The court need not reach that issue for the reasons discussed below.

3

A.     **Claims Between Insurers; Real Party in Interest**

As Mt. Hawley observes, courts have held that § 3420(d)(2)'s notice requirement does not apply to claims between insurers. *See Old Republic Gen. Ins. Corp. v. Century Sur. Co.*, No. 17 Civ. 3415, 2018 WL 4356729, at *7 (S.D.N.Y. Sept. 12, 2018) (citing cases); *see also, e.g., Zurich Am. Ins. Co. v. Liberty Mut. Ins. Co.*, 710 F. App'x 3, 7 (2d Cir. 2017) (summary order) ("Zurich has given us no reason to depart from the litany of New York cases holding that § 3420(d) does not apply to claims between insurers."); *Philadelphia Indem. Ins. Co. v. Indian Harbor Ins. Co.*, 434 F. Supp. 3d 4, 13 (E.D.N.Y. 2020) (citing *Old Republic*); *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 407 (S.D.N.Y. 2015) ("Section 3420(d)(2) 'does not apply to claims between insurers.'" (quoting *JT Magen v. Hartford Fire Ins. Co.*, 64 A.D.3d 266, 271 (1st Dep't 2009))). The rationale for this rule is that § 3420(d)(2)'s notice provision is "designed to protect the insured . . . against the risk, posed by a delay in learning the insurer's position, of expending . . . resources in an ultimately futile attempt to recover damages from an insurer"—none of which are "risks to which another insurer seeking contribution is subject." *Zurich*, 710 F. App'x at 7 (alterations in original) (quoting *Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 27 A.D.3d 84, 92 (1st Dep't 2005)).

Here, one of the named parties in this action, Reidy, is a general contractor, not an insurer. But Reidy entered into the settlement in the underlying litigation. *See* Stipulation of Discontinuance, *Zhigue v. Lexington Landmark Properties LLC*, No. 823/2013 (N.Y. Sup. Ct. Mar. 11, 2024), NYSCEF No. 278. Thus, according to Mt. Hawley, Reidy is left "with no actual interest" in this federal case and Reidy's insurer Merchants is the "real party in interest" with respect to the claim for reimbursement against Mt. Hawley. *Tech. Ins. Co. v. First Mercury Ins. Co.*, 194 A.D.3d 530, 531 (1st Dep't 2021) (quoting *George Campbell Painting v. Nat'l Union*

4

*Fire Ins. Co.*, 92 A.D.3d 104, 118 (1st Dep't 2012)). Mt. Hawley asserts that the only relevant parties are insurers, and thus § 3420(d)(2) "no longer applies in this action, if it ever did." (Doc. 36 at 3.)

In *First Mercury*, as here, the plaintiffs were an insurer and its insured. Unlike this case, however, the insured in *First Mercury* sought no relief in the complaint. *Tech. Ins. Co. v. First Mercury Ins. Co.*, No. 160472/2017, 2020 WL 228341, at *1 (N.Y. Sup. Ct. Jan. 10, 2020), *aff'd*, 194 A.D.3d 530 (1st Dep't 2021). Without any viable claim for the insured, the *First Mercury* trial court was able to conclude that the remaining plaintiff—an insurer—"is not entitled to rely upon [§ 3420(d)(2)]." *Id.* In this case, however, Reidy has sought a declaration that Mt. Hawley must provide coverage. (Doc. 1 at 4.) Thus, even if Merchants cannot rely on § 3420(d)(2), Reidy could. And the court can discern no reason why a 2024 settlement would alter the notice to which Reidy might have been entitled in the years before the settlement.

B.   **Section 3420(d)(2)'s Applicability to Denial for Lack of Insured Status**

Section 3420(d)(2)'s notice requirement is inapplicable where denial of coverage was based on a lack of insured (or additional insured) status, as opposed to a disclaimer based on an exclusion. *See Zappone v. Home Ins. Co.*, 55 N.Y.2d 131, 134 (1982) (denial of coverage for purposes of § 3420(d)(2) (then § 167(8)) "does not encompass denial that the policy as written could not have covered the liability in question under any circumstances"); *see also Strauss Painting, Inc. v. Mt. Hawley Ins. Co.*, 24 N.Y.3d 578, 596 (2014) (per curiam) (citing *Zappone* and holding that where owner of premises was not an additional insured under contractor's comprehensive general liability policy, it was unnecessary to decide whether CGL carrier promptly notified the owner that it was disclaiming coverage); *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188 (2000) ("Disclaimer pursuant to section 3420(d) is

5

unnecessary when a claim falls outside the scope of the policy's coverage portion."); *Crespo v. City of New York*, 303 A.D.2d 166, 167 (1st Dep't 2003) (same). Mt. Hawley argues that § 3420(d)(2) is inapplicable here because the relevant denial of coverage in this case is based on lack of insured status. (Doc. 36 at 4.)

In support, Mt. Hawley notes that the Endurance Limitation quoted above appears in paragraph "A" of the "Additional Insured" endorsement immediately after the provision stating that "the following" are included as additional insureds:

> Any entity required by written contract or as required in writing from a municipality as a condition of issuing a permit (hereinafter for purposes of this endorsement called "additional insured") to be named as an insured is an insured but only with respect to liability arising out of your premises, 'your work' for the additional insured, or acts or omissions of the additional insured, in connection with their general supervision of 'your work' to the extent set forth below . . . .

(Doc. 19-21 at 155; *see also* Doc. 31 at 2–3.) Mt. Hawley asserts that this language (the "Coverage Grant") "limits additional insured status to liability arising out of an additional insured's general supervision of the named insured's work." (Doc. 36 at 4.)

The court is unpersuaded. Consistent with the plain language of the Coverage Grant, "additional insured" status is not limited only to liability arising out of an additional insured's general supervision of the named insured's work. The grant extends "additional insured" status to entities (like Reidy) required by written contract to be so named with respect to liability arising out of the named insured's (Vanquish's) work for the additional insured. This is consistent with the court's previous description of Reidy as an "additional insured" for purposes of analyzing the Employer's Liability Exclusion. (*See* Doc. 31 at 6; *id.* at 7 n.1.) As the court previously observed, Reidy is an "entity required by written contract" to be named as an insured." (*Id.* at 7.) And the scaffold accident is "within the scope of work covered by the Endurance and Mt. Hawley policies." (*Id.*)

6

Mt. Hawley concedes that the language following the Coverage Grant—including the Endurance Limitation quoted above—is "exclusionary language." (Doc. 36 at 4.) But Mt. Hawley maintains that the Endurance Limitation is more than an exclusion because it removes Reidy as an "additional insured" in the first instance. (*See id.*) Citing *American Ref-Fuel Co. of Hempstead v. Employers Ins. Co. of Wausau*, 265 A.D.2d 49 (2d Dep't 2000), Mt. Hawley asserts that "[t]he fact that the second cited paragraph [the Endurance Limitation] adds separate exclusionary language is immaterial." (Doc. 36 at 4.)

In *American Ref-Fuel*, the Town of Hempstead was an additional insured under a provision providing coverage for any organization for which the plaintiff—the operator of a municipal incinerator and the named insured—"agreed by written contract to procure bodily injury or property damage liability insurance, but only for liability arising out of operations performed by you or on your behalf." 265 A.D.2d at 51 (alteration in original). The insurer argued, among other things, that "the policies do not cover the liability of the Town of Hempstead, because any liability incurred by the Town of Hempstead did not arise out of the operations performed by the plaintiff or on the plaintiff's behalf." *Id.* The plaintiff asserted that the insurer failed to timely disclaim coverage under § 3420(d).

Reasoning that it was unclear "who was responsible for the alleged condition which purportedly caused the claimant's injuries," the Appellate Division held that "no timely disclaimer was required" on the issue of potential coverage for the Town. *Id.* at 54 (citing *United Servs. Auto. Ass'n v. Meier*, 89 A.D.2d 998 (2d Dep't 1982)). There was insufficient evidence in that case to determine "whether the defendant ever provided coverage for the alleged condition which purportedly caused the claimant's injuries." *Id.* It appears that the Appellate Division viewed the "but only" clause in the coverage grant as withdrawing "additional insured"

status where liability arose out of anything other than "operations performed by you or on your behalf."

*American Ref-Fuel* is distinguishable. Like the grant in *American Ref-Fuel*, the Coverage Grant here is limited. It extends "only with respect to liability arising out of [1] your premises, [2] 'your work' for the additional insured, or [3] acts or omissions of the additional insured, in connection with their general supervision of 'your work.'" (Doc. 19-21 at 155 (bracketed numbers added).) To come within the third category, the additional insured's actions or omissions must be in connection with their "general supervision" of the insured's work. If the additional insured's relevant conduct was not "general supervision," then the third category would not apply. But unlike the grant in *American Ref-Fuel*, the limitations in the Coverage Grant are phrased in the alternative, and the second category (liability arising out of "'your work' for the additional insured") does not depend on any inquiry into "general supervision." Reidy is an "additional insured" under that second category.

In this court's view, the Endurance Limitation that follows the Coverage Grant is more like an exclusion than like a carve-out from "additional insured" status. The plain language of the endorsement supports that conclusion. The Coverage Grant, by its terms, describes the entities that "are included as additional insureds." (Doc. 19-21 at 155.) The Endurance Limitation, in contrast, begins with the phrase "This insurance does not apply to." (*Id.*) That language is "in the nature of a policy exclusion." *Meier*, 89 A.D.2d at 999. As noted above, even Mt. Hawley concedes that the language in the Endurance Limitation is "exclusionary." (Doc. 36 at 4.) The court therefore rejects Mt. Hawley's contention that § 3420(d)(2) is inapplicable because the denial of coverage was based on a lack of insured (or additional insured) status. Any denial on this issue would be based on an exclusion.

### C. Whether Mt. Hawley was Prohibited from Issuing a Disclaimer Under the Endurance Limitation Before Resolution of the Underlying Litigation

Finally, Mt. Hawley asserts that it could not properly have issued a § 3420(d)(2) notice during the pendency of the underlying litigation because the Endurance Limitation made the existence of coverage turn on whether Reidy was "actively at fault" and because, according to Mt. Hawley, a liability insurer is prohibited from denying coverage "based on a material question of its insured's fault that is at issue in the underlying litigation." (Doc. 36 at 5–7.) For the latter proposition, Mt. Hawley relies primarily upon *622 Third Avenue Co. v. National Fire Insurance Co. of Hartford*, 646 F. Supp. 3d 466 (S.D.N.Y. 2022). The plaintiff in that case moved for partial summary judgment seeking a declaration that the Harleysville Worcester Insurance Company had a duty to defend the plaintiff in an underlying personal injury action. *Id.* at 469. The court granted that motion, reasoning that the allegations in the complaint triggered a duty to defend and that the insurer could not defeat its duty to defend by relying on extrinsic evidence that was "bound up with the merits of the underlying case." *Id.* at 480–81.

That ruling was an application of the rule that "extrinsic evidence may terminate the duty to defend . . . when extrinsic evidence *unrelated to the underlying merits* unambiguously shows that there is no possibility of coverage." *Id.* at 476 (emphasis added) (citing *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004)). Courts have articulated a variety of policies for the rule, including the following:

> To the extent the declaratory judgment might resolve an issue adversely to the insured, it would be inherently unfair to force the insured to litigate against the insurance company; under those circumstances, rather than obtaining the benefit of the company's resources and expertise in defending against the plaintiff, those resources, for which the insured had bargained, would be turned against the insured and used to help establish his or her liability.

2 Allan D. Windt, *Insurance Claims and Disputes* § 8:4 (6th ed.); *see also City of N.Y. v. Liberty Mut. Ins. Co.*, No. 15 Civ. 8220, 2017 WL 4386363, at *15 (S.D.N.Y. Sept. 28, 2017) ("If an

9

insurer could defeat its duty by proving, in a collateral action, the existence of a fact that is relevant to the merits of the underlying suit, it would follow that the insurer could subvert its obligation to defend against meritless suits. Worse, such a posture would place the insured in an untenable position: the insured would have to argue, in the declaratory action, that the fact in question is disputed, even as the insured made the opposite argument in the underlying action to try and defeat its own liability.").

Mt. Hawley concedes that *622 Third* concerns "the circumstances in which an insurer can seek to be relieved of a duty to defend" but, according to Mt. Hawley, "its principles apply equally and for the same reasons to the duty to indemnify." (Doc. 36 at 6.) The court is not persuaded. Neither *622 Third* nor the other authorities that Mt. Hawley cites indicates that a liability insurer cannot deny *coverage* when extrinsic evidence shows that coverage is unavailable. The duties to defend and to indemnify are different, the former being "far more expansive" than the latter. *622 Third*, 646 F. Supp. 3d at 475 (quoting *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 94 (2d Cir. 2018)). And denial of coverage does not involve a collateral declaratory action that might subvert the obligation to defend or put the insured in an "untenable" position.

Here, the evidence relevant to whether Reidy was "actively at fault" overlaps with the facts at issue in the (now settled) state-court litigation. But Mt. Hawley did not institute a declaratory action seeking to be relieved of the duty to defend. The rule in *622 Third* regarding extrinsic evidence is inapplicable because it concerns the duty to defend, not the duty to indemnify or the obligation to provide notice of a denial of coverage based on a policy exclusion. Indeed, Mt. Hawley relied on the Endurance Limitation *before* the underlying settlement when, on November 11, 2022, Mt. Hawley moved for summary judgment. (*See* Doc. 20-27 at 14–15.)

### D. Conclusion as to Timeliness of the Disclaimer

For the reasons above, the court rejects each of Mt. Hawley's three arguments against application of § 3420(d)(2)'s notice requirement. The court further concludes that Mt. Hawley failed to give timely written notice of a disclaimer based on the Endurance Limitation under § 3420(d)(2). Mt. Hawley's failure to comply with § 3420(d)(2) "precludes denial of coverage based on a policy exclusion" such as the Endurance Limitation at issue here. *Golden Ins. Co. v. Ingrid House, Inc.*, 538 F. Supp. 3d 293, 301 (S.D.N.Y. 2021) (quoting *Bettenhauser*, 95 N.Y.2d at 189).

## II. Remaining Issues

Because Mt. Hawley cannot now deny coverage based on the Endurance Limitation, it is unnecessary for the court to reach Plaintiffs' remaining arguments regarding Mt. Hawley's "ripeness" assertion and regarding the applicability of the Endurance Limitation on its merits. This ruling—together with the court's prior ruling that the Employer's Liability Exclusion does not bar Reidy's claim for coverage (Doc. 31)—enables the court to dispose of the cross-motions for summary judgment as follows.

### Conclusion

Plaintiffs' Motion for Summary Judgment (Doc. 19) is GRANTED and Defendant's Motion for Summary Judgment (Doc. 20) is DENIED.

Dated this 28th day of March, 2024.

Geoffrey W. Crawford, Judge
United States District Court